UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

DARRYL DUNCAN,
   Plaintiff,

vs.                                 No. 08-4017

ROGER WALKER, et al.,
   Defendants

## SUMMARY JUDGEMENT ORDER

This cause is before the court for consideration of the defendants' motion for summary judgement [d/e 40]; the plaintiff's motion for sanctions [d/e 60] and the plaintiff's motion for a preliminary injunction [d/e 69].

### I. BACKGROUND

The plaintiff filed his lawsuit pursuant to 42 U.S.C. §1983 claiming his constitutional rights were violated at Hill Correctional Center. On July 28, 2008, the court conducted a merit review of the plaintiff's complaint and found that he had adequately alleged that:

   1) Defendants Illinois Department of Corrections Director Roger Walker, Warden Guy Pierce, Warden Gerardo Acevedo, Warden Michelle Pulley, Warden Steve Wright, Teacher Matthew Pogue, Correctional Officer Bill Smith and Administrative Review Board Member Melody Ford violated the plaintiff's constitutional right to meaningful access to the courts;
   2) Defendants Walker, Pierce, Acevedo, Pulley, Wright, Pogue, Smith and Ford retaliated against the plaintiff based on his attempts to file a lawsuit and his previous lawsuits; and,
   3) Defendant Vern Peterson violated the plaintiff's Eighth Amendment rights on November 1, 2007. July 28, 2008 Merit Review Order.

Specifically, the plaintiff says he was denied legal supplies which lead to the dismissal of a lawsuit. The plaintiff says the action was taken in retaliation for his lawsuits. In addition, the plaintiff says on November 1, 2007, Defendant Peterson locked him in the law library with no running water or bathroom for at least two hours.

### II. FACTS

Brian Fairchild is the Chairperson of the Office of Inmate Issues and is familiar with the record keeping for the Administrative Review Board (herein ARB). Fairchild says he has searched the records of the ARB and found a grievance dated October 15, 2007, in which the plaintiff said he had been denied legal materials he needed to respond to a court order. (Def. Mot, Fair. Aff., p. 2) In his grievance, the plaintiff clearly states that Defendants Wright, Pogue, Smith and Pulley have denied him meaningful access to the courts. (Comp., p. 13-14). There is no mention of any other individual. In a February 6, 2008 letter, Melody Ford recommended that the grievance be denied and on the same

1

day, Director Walker's designee agreed with that recommendation. (Def. Mot, Fair. Aff., p. 2) Fairchild says that Director Walker did not receive or review the inmate's grievance. The plaintiff also admits he has never met or spoken with Defendant Walker. (Def. Mot, Plain. Depo., p. 67)

Fairchild says there is no record of any grievance from the plaintiff concerning his claims that any defendant refused to provide him legal materials based on retaliation, and there is no grievance concerning his claim that Defendant Peterson locked him in the law library.(Def. Mot, Fair. Aff., p. 2)

Defendant Matthew Pogue says he is an Educator at Hill Correctional Center but was filling in at the law library desk on August 31, 2007. (Def. Memo, Pog. Aff, p. 1). Pogue says the plaintiff asked him for copies and supplies. Pogue says he told the plaintiff that the copies could only be made of legal materials and only indigent prisoners were entitled to supplies. (Def. Memo, Pog. Aff, p. 1) In his complaint, the plaintiff says he asked for paper and envelopes. (Comp., p. 8-9) Defendant Pogue says he also told the plaintiff that if he took supplies, and it was determined he was not indigent, he could receive a disciplinary ticket. Pogue says he does not recall the plaintiff telling him about an upcoming court deadline. (Def. Memo, Pog. Aff, p. 1)

Defendant Pogue says Warden Pulley was not in the law library on that day and he did not contact her regarding the plaintiff. (Def. Memo, Pog. Aff, p. 1) The plaintiff also states that he did not personally talk to Defendant Pulley concerning his problems with legal supplies in August of 2007.

Pogue says he called the Business Office Administrator, Bill Smith, to inquire about the plaintiff's financial status. (Def. Memo, Pog. Aff, p. 1) Bill Smith says indigent meant "to be without the expectation of funds" and the plaintiff was not indigent in this respect. (Def. Memo, Smith Aff., p. 1). However, on August 31, 2007, the plaintiff was charged $1.65 for legal postage which left his trust fund balance at -$5.48. (Def. Memo, Wright Aff., p. 1).

Business Officer Administrator Smith says his records indicated that the plaintiff was receiving state pay and money from outside sources, so he was not indigent. Smith says the plaintiff's trust fund ledgers showed he received money on four occasions from July 13, 2007 to September 14, 2007 in amounts from $8 to $25. (Def. Memo, Smith Aff., p. 1) Smith also says the plaintiff was given an opportunity to go to the Commissary where he could purchase envelopes and postage on July 25, 2007; August 7, 2007; and September 18, 2007. (Def. Memo, Smith Aff., p. 1)

Defendant Wright says he also spoke with the plaintiff in the law library on August 31, 2007, after Defendant Pogue informed him of the plaintiff's request for supplies. Wright says he also told the plaintiff that supplies were for indigent inmates. (Def. Memo, Wright Aff., p. 1). Wright further repeated that if the plaintiff took supplies and he was not indigent, he could receive a disciplinary ticket for giving false information to an employee. (Def. Memo, Wright Aff., p. 1). Wright says he has no memory of the plaintiff claiming he had an upcoming court deadline.

In his deposition, the plaintiff said the problem with obtaining legal supplies on August 31, 2007 was an "isolated incident." (Def. Memo, Plain. Depo, p. 35) The plaintiff said he went to the law library more than once a month and sometimes twice a week during his incarceration.

Warden Acevedo says the plaintiff sent an emergency grievance to his office on August 31,

2007. The grievance was received by the grievance officer on September 4, 2007, and reviewed and signed by the Warden's designee on September 11, 2007. (Def. Memo, Acev. Aff., p. 1). The designee determined that the grievance did not fit the criteria of an emergency and denied he grievance. The plaintiff did state that he needed legal supplies and he had a pending court deadline, but did not mention a specific date. Acevedo says he did not personally review the grievance, nor did he have any contact with the plaintiff concerning his grievance. (Def. Memo, Acev. Aff., p. 1)

The plaintiff filed a Petition for Writ of Certiorari with the United States Supreme Court on April 23, 2007), (Def. Mot, Ex. B-C) The plaintiff filed a reply to the respondent's brief on July 31, 2007. (Def. Mot, Ex. C). In his deposition, the plaintiff says he was attempting to mail exhibits to the United States Supreme Court on August 31, 2007. (Def. Mot, Ex. A, p. 14). His petition was denied on October 1, 2007. (Def. Mot, Ex. C) The plaintiff attached a letter to his complaint from the Supreme Court dated November 13, 2007, returning the plaintiff's Petition for Rehearing as "out-of-time." (Comp, p. 18).

Plaintiff's case of *Duncan v. Pierce*, Case No. 07-4028, was pending before this court on August 31, 2007, but the docket shows no filings due on or near this date. The case was ultimately dismissed on October 24, 2008, based on the plaintiff's repeated failure to participate in a deposition and failure to pay the costs of the deposition.

III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56c. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches,

intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

IV. ANALYSIS

A. FAILURE TO EXHAUST

The defendants argue that the plaintiff has failed to exhaust his administrative remedies for some of the claims or defendants in his complaint. The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997e(a).

The purpose of the exhaustion requirement is to allow prison officials the time and opportunity to respond to complaints internally before an inmate starts litigation. *Smith v Zachary,* 255 F.3d 446, 450-51 (7th Cir. 2001). The Seventh Circuit has taken a strict compliance approach to exhaustion requiring a prisoner to pursue all available administrative remedies and comply with the prison's procedural rules and deadlines. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.2002)

If an inmate fails to follow the grievance procedure rules, his claims will not be considered to be exhausted, but instead forfeited, and he will be barred from filing suit in federal court even if administrative remedies are for practical purposes no longer available to him due to his procedural default. *Pozo,* 286 F.3d at 1025.

There is no record before the court that the plaintiff exhausted his administrative remedies for his retaliation claim or his claim that he was locked in the law library. The plaintiff says he did file a grievance concerning Defendant Peterson, but failed to receive a response. However, the plaintiff has not provided a copy of this initial grievance or any other evidence beyond this bare assertion. The court will dismiss the plaintiff's retaliation and Eighth Amendment claims for failure to exhaust administrative remedies as required.

The plaintiff has clearly exhausted his administrative remedies for his claim that Defendants Wright, Pogue, Smith and Pulley denied him meaningful access to the courts. However, the defendants argue that the plaintiff did not name Defendants Walker, Pierce, Acevedo and Ford in his grievance, and therefore they should be dismissed.

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v Bock,* 549 U.S. 199, 218 (2007). The grievance procedure applicable to the Illinois Department of Corrections is set forth under Title 20 of the Illinois Administrative Code, Sections 504.800-504.850:

> The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the

4

name of each person who is the subject of or who is otherwise involved
in the complaint. This provision does not preclude an offender from filing
a grievance when the names of the individual are not know, but the offender
must include as much descriptive information about the individual as possible.
20 Ill.Admin.Code §504.810(b).

Many federal courts of appeals have not endorsed a requirement that a defendant to a civil suit first be named in an inmate's prison grievance to constitute exhaustion under 42 U.S.C. § 1997e(a) *See Shaw v. Frank,* 2008 WL 283007 at 10 (E.D.Wis. Jan. 31, 2008). "Rather, the standard is whether the offender complaint would put an official on notice of the plaintiff's claim." *Id.*

In the plaintiff's case, there is nothing about his grievance that would give Defendants Walker, Pierce, Acevedo and Ford notice of the claims against them. The plaintiff likely named Defendants Walker, Acevedo and Ford because their names were on the denial of his grievance. However, the uncontradicted evidence before the court demonstrates that neither Acevedo nor Walker received or reviewed the plaintiff's grievance. Therefore, the court will dismiss the plaintiff's claims against Defendants Walker, Pierce and Acevedo for failure to exhaust administrative remedies and for failure to demonstrate that they had any personal involvement in the claims against them.

B. ACCESS TO THE COURTS.

The defendants also argue that the plaintiff has failed to show they violated his constitutional rights when he was denied supplies. Courts have long recognized an inmate's right of meaningful access to courts. *see Bounds v. Smith*, 430 U.S. 817, 822-23 (1977); *Lehn v. Holmes,* 364 F.3d 862, 865-66 (7th Cir.2004). However, that right is violated only when an inmate is deprived of access and suffers an injury as a result of the deprivation. *see Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir.2009). To establish an "actual injury," an inmate must show that an attempt to pursue nonfrivolous litigation was hindered by unjustified acts or conditions caused by the defendants. *See Tarpley v. Allen County*, 312 F.3d 895, 899 (7th Cir.2002). The defendants argue the plaintiff cannot show actual injury based on the denial of paper and envelopes on August 31, 2007.

The plaintiff says he did have an October 1, 2007 deadline before the United States Supreme Court, but has failed to provide evidence of this claim. (Resp, p. 2). Even if the plaintiff did have an October deadline, there is no evidence that failure to receive envelopes in August would have any impact on the plaintiff. The plaintiff was able to buy items in the Commissary on September 18, 2007. The plaintiff has provided evidence of no actual injury in any lawsuit. *See Simkins v. Bruce*, 406 F.3d 1239, 1244 (10th Cir.2005) (recognizing no actual injury where underlying case is decided for reasons "logically and practically unrelated" to alleged unjustified acts). The motion for summary judgement is granted.

V. OTHER MOTIONS

The plaintiff has filed a motion for sanctions against the defendants claiming that the defendants have failed to participate in good faith settlement negotiations with the plaintiff. [d/e 60]. The defendants state they sent the plaintiff's settlement demands to the Illinois Department of Corrections and they were rejected. The defendants are not required to reach a settlement with the

plaintiff.  The plaintiff also alleges that various events have occurred because the defendants are retaliating against him.  The plaintiff's motion for sanctions is not the appropriate way to address his concerns and the plaintiff should use the grievance procedure at his current institution if he plans to file a lawsuit concerning those allegations.  The motion is denied.

The court notes they plaintiff also filed a "Motion for Objection to Defendant's Response. [d/e 67].  The document is actually a reply to the defendants' response to his motion for sanctions. The motion is denied. [d/e 67]

Finally, the plaintiff has filed a motion asking the court to grant a preliminary injunction. [d/e 69].   The plaintiff is asking the court to order his release and order the defendants to pay damages. The plaintiff again states that the defendants have not made an effort to "reconcile this matter in good faith." (Plain. Mot, p. 2).  The defendants are not required to reach a settlement with the plaintiff nor to discuss a settlement with the plaintiff.

The plaintiff further says it's a conflict of interest for him to remain in the Illinois Department of Corrections.   The plaintiff says he has been beaten, stabbed and given false disciplinary tickets. The only attachment to the plaintiff's motion are copies of disciplinary reports he has received from individuals who are not named in this lawsuit.  There is no evidence that the plaintiff has been attacked or that any attack is in any way related to this lawsuit.  The motion is denied. [d/e 69]

**IT IS THEREFORE ORDERED that:**

**1) The defendants' motion for summary judgment is granted. [d/e 40].  The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56.  The case is terminated.  The parties are to bear their own costs.**

**2) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1)©.  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g)**

**3) The agency having custody of the plaintiff is directed to remit the docketing fee of $350.00 from the plaintiff's prison trust fund account if such funds are available.  If the plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety. The filing fee collected shall not exceed the statutory filing fee of $350.00.**

**4) The plaintiff is responsible for ensuring the $350.00 filing fee is paid to the clerk of the court even though his case has been dismissed. Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full. The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.**

**5) The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

**6) The plaintiff's motion for sanctions and motion for objection to the defendants response are denied. [d/e 60, 67]**

**7) The plaintiff's motion for a preliminary injunction is also denied. [d/e 69]**

Entered this 18th day of October, 2010.

                                 **\s\Harold A. Baker**
                              _____
                                  HAROLD A. BAKER
                             UNITED STATES DISTRICT JUDGE